```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

Susan Branch

    v.                                            Civil No. 17-cv-098-LM
                                                 Opinion No. 2018 DNH 070
Acting Commissioner of
the US Social Security Administration


# **O R D E R**

Claimant Susan Branch seeks judicial review of the decision of the Acting Commissioner of the Social Security Administration, denying her application for widow's survivor benefits under 42 U.S.C. § 402(e). Branch argues, among other things, that the decision of the Administrative Law Judge ("ALJ") was not supported by substantial evidence. For the reasons that follow, the court affirms the decision of the Acting Commissioner.

## **STANDARD OF REVIEW**

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); see also Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's

factual findings as long as they are supported by substantial evidence.  42 U.S.C. § 405(g); see also Fischer v. Colvin, 831 F.3d 31, 34 (1st Cir. 2016).  Questions of law presented by the ALJ's decision are reviewed de novo.  See Fischer, 831 F.3d at 34.

## BACKGROUND

The following facts are taken from the parties' joint statement of facts (doc. no. 13), unless otherwise noted.  In April 2013, Branch applied for widow's survivor benefits on the basis of her marriage to Jonathan Branch.  Branch stated in her application for benefits that they had been married from April 20, 2003 to July 6, 2003, when Jonathan passed away.  Her application was denied on the ground that she had not been married for the minimum nine months required to qualify for such benefits.  See 42 U.S.C. § 416(c)(1)(E); 20 C.F.R. § 404.335(a)(1).

Branch requested reconsideration, arguing that she had a marriage of the requisite length because she and Jonathan had been in a common law marriage prior to their legal marriage.  Branch's request for reconsideration was denied, after which she sought a hearing before an ALJ.

The ALJ held a hearing in September 2014.  Branch was represented by counsel.  The ALJ examined whether Branch could

qualify for benefits on the basis of her 2003 legal marriage. The ALJ also considered whether Branch's relationship with Jonathan prior to 2003 qualified as a common law marriage under New Hampshire law. Finally, the ALJ considered another avenue for benefits: a surviving spouse is entitled to benefits, even if the marriage was shorter than nine months, where "[a]t the time of [the] marriage the insured was reasonably expected to live for 9 months, and the death of the insured was accidental." 20 C.F.R. § 404.335(a)(2)(i).

At the hearing, Branch testified regarding her claim that she and Jonathan had been in a common law marriage long before their legal marriage in 2003. Branch and Jonathan began living together in 1985. Jonathan had three boys from a previous marriage, and Branch had two. Branch and her sons maintained a separate living space in one unit of a duplex, and Jonathan and his sons maintained a separate living space in the other unit. At some point after moving in, Branch and Jonathan installed a door between the units so they could move between their units. Branch testified that this arrangement allowed them to live together as a family while also ensuring that the children had their own private spaces.

Branch also explained the reasons for their legal marriage in 2003. Initially, they decided not to marry because they were

3

both self-employed and believed that the "Marriage Penalty Act" would negatively affect their finances. When Jonathan's cancer progressed in March 2003, Jonathan told Branch that he wanted her to have his name and, concerned about her finances, wanted to ensure that she would be entitled to Social Security benefits. They thus decided to marry in April 2003, and Branch changed her surname from Curter to Branch.

Branch submitted other evidence for the ALJ's consideration. In one letter, Jamie Branch—one of Jonathan's sons—states that everyone "moved about as a single family" in the duplex, and that Branch and Jonathan shared a bedroom. Admin. Rec. at 75. In another letter, a family friend attests that Branch and Jonathan had a "loving relationship" and that they maintained "unique living arrangements." Id. at 77. Other documentary evidence of note includes Jonathan's 2002 will, in which he refers to Branch as his "fiancée." Id. at 79.

The ALJ denied Branch's application for benefits. In order to have a common law marriage under New Hampshire law, the parties must have, for the three years preceding one partner's death, "(1) cohabited; (2) acknowledged each other as husband and wife; and (3) [been] generally reputed to be husband and wife in their community." In re Estate of Bourassa, 949 A.2d 704, 706 (N.H. 2008). Regarding acknowledgement, the ALJ

4

determined that Branch "knew she was not married" prior to the legal marriage in 2003. Admin. Rec. at 15. In support, the ALJ noted that Branch and Jonathan had explicitly declined to marry to avoid certain tax penalties, and that Jonathan had referred to Branch as his fiancée in his will. The ALJ also appears to have considered the requirement of general reputation: the ALJ noted that the family friend, who had described the loving relationship between Jonathan and Branch, "did not mention that the two held themselves out as husband and wife." Id.

Based on his review of the evidence, the ALJ made the following findings: (1) Branch "formally married" Jonathan on April 1, 2003; (2) the marriage did not last nine months prior to Jonathan's death in July 2003; (3) Jonathan's death was not accidental and he was not expected to live as long as nine months at the time of the marriage; and (4) Branch and Jonathan's relationship prior to their legal marriage did not constitute a common law marriage under New Hampshire law.

Branch requested review from the Appeals Council. After the Appeals Council denied the request, Branch appealed to this court.

**DISCUSSION**

On appeal, Branch does not contend that she qualifies for survivor benefits solely by virtue of her legal marriage in 2003. Rather, Branch asserts that she qualifies for such benefits on the basis of her alleged common law marriage to Jonathan, and she argues that the ALJ erred in a number of respects when he concluded otherwise. She raises the following arguments: (1) the ALJ's decision on common law marriage is not supported by substantial evidence; (2) the ALJ failed to provide any reason why he disbelieved Branch's testimony; and (3) the ALJ erroneously prohibited Branch's friend from testifying at the hearing. The court addresses each of Branch's arguments in turn, but it begins by setting forth the law applicable to survivor benefits and common law marriage in New Hampshire.

Under section 402, the widow of "an individual who died a fully insured individual" is entitled to widow's insurance benefits, so long as certain requirements are met. 42 U.S.C. § 402(e)(1). To be considered the widow of an insured individual under the statute, the claimant must satisfy one of a number of alternative conditions. See 42 U.S.C. § 416(c)(1); 20 C.F.R. § 404.335(a). As is relevant here, a claimant is deemed to be the widow of an insured individual if her marriage to the insured lasted for at least nine months immediately before the

insured died.[1] 20 C.F.R. § 404.335(a)(1); see also 42 U.S.C. § 416(c)(1)(E).

To determine the validity and length of a marriage, the court looks to the law of the state in which the insured individual was domiciled at the time of death. See 42 U.S.C. § 416(h)(1)(A)(i); 20 C.F.R. §§ 404.344, 404.345. An applicant's common law marriage to an insured individual, if recognized in the domicile state, can operate as a valid marriage for purposes of obtaining widow's insurance benefits. See 20 C.F.R. § 404.726; see also Gainey v. Barnhart, 299 F.3d 1004, 1006 (8th Cir. 2002); Renshaw v. Heckler, 787 F.2d 50, 52 (2d Cir. 1986).

The parties agree that New Hampshire law is applicable. "New Hampshire is a jurisdiction which does not recognize the validity of common-law marriages except to the limited extent provided by RSA 457:39." Bourassa, 949 A.2d at 706. That statute, which has existed in substantially the same form since the mid-19th century, provides, "Persons cohabiting and

---

[1] A person seeking survivor benefits may also qualify as a widow if "[a]t the time of [the] marriage the insured was reasonably expected to live for 9 months, and [the person] had been previously married to the insured for at least 9 months." 20 C.F.R. § 404.335(a)(2)(iii). Branch appears to argue that she satisfies this condition. Because it is premised on the validity of her alleged common law marriage, her argument is unavailing for the reasons set forth in this order.

7

acknowledging each other as husband and wife, and generally reputed to be such, for the period of 3 years, and until the decease of one of them, shall thereafter be deemed to have been legally married." RSA 457:39; see also De Lisle v. Smalley, 63 A.2d 240, 240-41 (N.H. 1949).

As noted above, a person seeking to invoke this provision must establish that, for the three years preceding the significant other's death, she and her significant other "(1) cohabited; (2) acknowledged each other as husband and wife; and (3) were generally reputed to be husband and wife in their community." Bourassa, 949 A.2d at 706. This three-part inquiry is fact-intensive. See, e.g., In re Estate of Brewster, No. 2016-0444, 2017 WL 2791699, at *1 (N.H. May 16, 2017) (unpublished opinion); Bourassa, 949 A.2d at 706-07.

It is important to emphasize that the record establishes that Branch and Jonathan maintained a loving, committed relationship for many years. Nevertheless, that is not the relevant test for determining whether a common law marriage exists under RSA 457:39—the inquiry is more technical and demanding.

For example, to establish the second element, acknowledgement, the surviving partner must show that the couple acknowledged—that is, openly declared—that they were husband

8

and wife.  See Bourassa, 949 A.2d at 707 (describing acknowledgement as "an open declaration").  It is not enough for a couple to conduct themselves as though they are husband and wife.  They must openly declare that they are husband and wife.  This is because, under RSA 457:39, "the conduct of cohabitation assumes at death the aspect of legality or illegality, according to whether the declarations of the parties . . . have avowed or disavowed the existence of a legal relationship."  Id. (internal brackets omitted).

The case of Bourassa is illustrative.  There, the New Hampshire Supreme Court affirmed the probate court's finding that the parties had not acknowledged each other as husband and wife and, consequently, did not meet an essential requirement for a common law marriage.  See id. at 706-08.  The court reached this conclusion notwithstanding that the couple lived together for approximately a decade and had a child.  See id. at 706.  Instead, in evaluating the probate court's findings, the New Hampshire Supreme Court highlighted the evidence showing that the parties had, throughout their relationship, publicly denied that they were married.  See id. at 707-08.  Although the surviving partner argued that the couple's conduct over the years amounted to an acknowledgement that they were husband and wife, the court found the evidence to be equivocal in that

respect.  Further, the court cautioned that only in "rare cases" can a couple's conduct, by itself, constitute an acknowledgement that they are husband and wife.  Id. at 707 (internal quotation marks omitted).

The third element, general reputation, involves a similar analysis.  The question is whether the couple was generally known in the community as husband and wife.  See In re Estate of Buttrick, 597 A.2d 74, 76 (N.H. 1991).  Relevant evidence may include testimony from family and friends attesting to their belief that the couple was married.  See id. at 76-77.

In light of the stringent requirements of RSA 457:39, the court is not persuaded the ALJ erred in denying Branch's claim for benefits.[2]  And, having reviewed the record, the court concludes that there is substantial evidence supporting the ALJ's findings on the elements of acknowledgement and general reputation.  Without those necessary elements, Branch's claim on common law marriage fails.  See Bourassa, 949 A.2d at 706.

With respect to the second element, there was sufficient evidence to support the ALJ's conclusion that, prior to their

---

[2] On December 13, 2017, this court ordered the parties to file supplemental memoranda on certain legal issues related to the operation of RSA 457:39.  Because the court concludes that the ALJ reasonably determined that Branch and Jonathan were not in a common law marriage, the court may assume that RSA 457:39 could otherwise afford Branch relief under these circumstances, and it need not address those legal issues.

10

legal marriage, neither Branch nor Jonathan acknowledged each other as husband and wife.  Branch testified that she and Jonathan specifically declined to marry prior to 2003, from which the ALJ reasonably inferred that Branch did not declare herself to be married during that time.  The ALJ's conclusion is further bolstered by the fact that Jonathan referred to Branch as his fiancée in his will, which was executed shortly before their legal marriage.  See [Delisle v. Smalley, 69 A.2d 868, 869-70 (N.H. 1949)](#) (stating that declaration in decedent's will—that she was "not legally married" to surviving partner—was relevant to the issue of acknowledgement).

Similarly, with respect to the third element, substantial evidence supports the ALJ's conclusion that Branch and Jonathan were not generally reputed to be married in the community.  As the ALJ noted, the family friend did not state that Branch and Jonathan referred to themselves as husband and wife; rather, Branch described Jonathan to the friend as her "soul mate" and "explained that they had been dating for some time."  Admin. Rec. at 77 (emphasis added).  The family friend does not suggest that he believed they were married.  And while the remaining letters overwhelmingly demonstrate that Branch and Jonathan had a serious, loving relationship, the letters do not show that the couple was generally believed to be married in the community.

11

Compare Buttrick, 597 A.2d at 76-77 (upholding finding of common law marriage where evidence showed family and friends overheard the cohabitant refer to the decedent as "hubby" and actually believed that they were a married couple).

Branch responds with two procedural arguments. First, she argues that the ALJ erred by rejecting or ignoring, without explanation, her testimony supporting her claim. Branch highlights the following exchange from the hearing, which consists of a few conclusory statements about the nature of the couple's relationship:

> Q   So from 1985 until 2003, you were together as a family. Did you consider yourselves to be married?
>
> A   We did.
>
> Q   And did you hold yourself out as a married couple?
>
> A   We did.
>
> Q   Your friends thought you were married?
>
> A   Friends thought we were married.

Id. at 131. At no point before or after this testimony does Branch actually assert that she and Jonathan openly declared themselves to be husband and wife prior to their legal marriage. Nor does she describe how they held themselves out as a married couple.

Although the ALJ did not expressly address Branch's testimony and explain the basis on which he rejected it, an ALJ

is not required to "address every piece of evidence." Johansen v. Barnhart, 314 F.3d 283, 287 (7th Cir. 2002). It is enough that the ALJ articulate "at some minimum level" his analysis of the record "so that the reviewing court can follow his reasoning." Id. The ALJ's decision satisfies that standard. It is evident from the ALJ's decision that the ALJ relied on specific evidence in the record—and not on Branch's statements noted above—to reach his decision. The court discerns no error in this respect.[3]  See Arrington v. Berryhill, No. 17-1047, 2018 WL 818044, at *1 (1st Cir. Feb. 5, 2018) (stating that it is the ALJ's prerogative to resolve conflicts in the evidence).

Branch next contends that the ALJ erred by barring Branch's friend from testifying at the hearing. As an initial matter, the record is unclear on what occurred with respect to this friend. There is nothing in the transcripts, ALJ's decision, or other records of the proceedings to verify whether the ALJ barred Branch's friend from testifying and, if so, why he did so. The only evidence on this question appears in Branch's request for Appeals Council review, in which she states that her

---

[3] Moreover, the ALJ may have found Branch credible as a general matter, but may have concluded that her conclusory testimony was not sufficient to meet the burden of demonstrating a common law marriage under New Hampshire law, which is especially demanding where the surviving partner seeks to do so on the basis of the couple's conduct. See Bourassa, 949 A.2d at 707.

13

friend "was not allowed into the hearing."  Admin. Rec. at 122.
In his decision, the ALJ mentions that a friend appeared with
Branch at the hearing, but he does not suggest that he
prohibited the friend from testifying.

Branch's argument concerning this witness is unpersuasive.
First, to the extent the ALJ did prohibit the friend from
testifying, it does not appear from the record that Branch
objected to the ALJ's ruling.  Therefore, any objection is
waived.  See Bonner v. Colvin, 153 F. Supp. 3d 465, 477 (D.
Mass. 2015) ("[H]aving failed to object [to the ALJ's
hypothetical questions] during the administrative hearing,
Plaintiff has waived this argument."); see also Mills v. Apfel,
244 F.3d 1, 8 (1st Cir. 2001).  Second, and more importantly,
Branch makes no proffer as to what this friend would actually
say; she merely suggests that "[a] testifying friend could have"
assisted the ALJ in determining whether Branch and Jonathan held
themselves out as husband and wife.  Doc. no. 8-1 at 7.  Absent
a detailed proffer, the court cannot conclude that this alleged
error warrants a remand.  See Ward v. Comm'r of Social Sec., 211
F.3d 652, 656 (1st Cir. 2000) ("[A] remand [to the ALJ] is not
essential if it will amount to no more than an empty
exercise.").

In sum, the ALJ's decision on common law marriage was supported by substantial evidence. Accordingly, in the absence of a common law marriage, Branch cannot satisfy the nine-month requirement, and the ALJ properly denied benefits. See 20 C.F.R. § 404.335(a)(1).

**CONCLUSION**

For the foregoing reasons, Branch's motion to reverse (doc. no. 8) is denied. The Acting Commissioner's motion to affirm (doc. no. 11) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

March 29, 2018

cc: All Counsel of Record